MORSE SIGNAL DEVICES, INC., APPELLANTS, v. DONAHUE, TAX COMMR., APPELLEE.

[Cite as Morse Signal Devices, Inc., v. Donahue, Tax Commr., 15 Ohio Misc. 126.]

(No. 58666—Decided November 15, 1967.)

Board of Tax Appeals, Department of Taxation, State of Ohio.

*Messrs. Rocker, Kahn, Kleinman, Yanowitz & Annan* and *Mr. Bennet Kleinman*, for appellant.

*Mr. William B. Saxbe*, attorney general, and *Mr. Jon A. Ziegler*, for appellee.

This cause and matter came on to be considered by the Board of Tax Appeals upon a notice of appeal filed herein under date of July 26, 1965, by the appellant above named from a final order of the Tax Commissioner dated July 13, 1965. The final order, in words and figures, reads as follows:

"The Tax Commissioner came to consider the above styled matter at a hearing scheduled thereon at Cleveland, Ohio on March 25, 1965. Bennett Kleinman and Robert Markey, attorneys at law of the law firm of Rocker, Kahn, Kleinman, Yanowitz & Annan, 1040 Leader Building, Cleveland, Ohio, appeared at the hearing, together with Arthur Orner, Manager.

"Notice of assessment was served on the assessee by certified mail on January 18, 1965.

"Upon review of the evidence, it appears that the items in question are a rental of tangible personal property and properly taxable.

"The penalty is conditionally remitted as set forth in the following order.

"Therefore, it is the order of the Tax Commissioner that if payment of

| Assessment | Penalty | Total |
|---|---|---|
| (Sales) $50,177.54 | Cancelled | $50,177.54 |

is made within thirty (30) days from date of receipt by the tax payer of this journal entry showing final determination, the assessment shall stand as adjusted in the above amount. In the event this matter is appealed to the Board of Tax Appeals; to an appropriate Court of Appeals; or to the Supreme Court, said thirty (30) day period shall begin to run from the date the entry of the Board of Tax Appeals is filed or the decision of an appropriate Appeals Court or the Supreme Court is rendered.

"If the total amount is not paid as above provided,

the assessment shall stand as issued in the following amount:

| | Assessment | Penalty | Total |
|---|---|---|---|
| (Sales) | $50,177.54 | $7,526.63 | $57,704.17." |

In its notice of appeal, the appellant says that the final order of the Tax Commissioner is erroneous in the following respects:

"(1) Appellant is engaged in the business of furnishing a service to its subscribers. This service is in the form of protection from the hazards of fire, burglary, etc. A monthly charge is made to subscribers for such protection. Appellant installs burglar and/or fire alarm units at the premises of a subscriber, which in approximately eighty (80) per cent of the cases in question are connected to a central station at appellant's offices. Signals are received at said central station in the event of a fire or burglary. Approximately twenty (20) per cent of the units installed by appellant are not connected from the subscribers' premises to the office of appellant. In all cases, the "units" installed upon the premises of a subscriber are installed for the benefit of appellant in order that appellant may properly service its subscribers. The cost of such equipment is nominal, the cost of labor for the installation thereof being in excess of the cost of said equipment in most cases. It is the position of the appellant that although certain tangible personal property is placed upon the premises of a subscriber, this transfer of tangible personal property is an inconsequential element of the service provided by appellant. The Tax Commissioner erred in failing to determine that said equipment is an inconsequential element for which no separate charges are made, the Tax Commissioner failing to determine correctly that Section 5739.01(B) exempts the within described activities from taxation.

"(2) The order of the Tax Commissioner is retroactive to a period preceding notice of assessment, said assessment period being from January 1, 1961 to December 31, 1963, and therefore, is contrary to law. Appellant submits that where the long established practice of permitting the business of appellant to be exempt from taxation has

been followed, such practice should estop the Tax Commissioner from assessing the present tax and penalty thereon. Appellant submits that should the transactions which are the subject of the Tax Commissoner's assessment be determined to be taxable, such determination should be prospective in its application."

The audit period involved herein is January 1, 1961, through December 31, 1963.

The matter was submitted to the Board of Tax Appeals on the notice of appeal, the statutory transcript supplied by the Tax Commissioner, the testimony and evidence presented to the Board of Tax Appeals at a hearing in Columbus, Ohio on September 29, 1965, the briefs filed by counsel and the oral arguments made to the full Board of Tax Appeals by counsel on September 5, 1967.

Morse Signal Devices, Inc., hereafter referred to as "Morse," is an Ohio corporation doing business in the Greater Cleveland and Cuyahoga County areas. Morse's business consists of installing and maintaing items of tangible personal property on and in the buildings and equipment of its customers or subscribers and in providing certain personal service in connection with the operation of some of the items. The items which Morse installs on its subscribers' buildings and equipment are purchased by Morse from its own suppliers and it appears that Morse pays the Ohio sales and use tax on these items when it makes the purchase thereof. The items consist of such things as alarm bells, foil tapes, wires, batteries, transformers, etc. These devices are placed on the buildings and equipment owned or operated by Morse's subscribers or customers and are placed there for the detection and protection of said buildings and equipment against such things as burglars, fire and holdup. Morse also installs various monitoring devices on its subscribers' premises and equipment to supervise water-flow, temperature, pressure, water level and night watchmen.

As stated before, Morse pays the proper sales or use tax on the purchase "price" of said items. In no case does Morse transfer legal title to the items to its subscribers, but it does transfer, either "actual," "constructive,"

or "formal" possession of said items from itself to its subscribers.

Morse makes a monthly charge to its subscribers, on a five-year contract basis, and for this monthly charge the subscriber is entitled to the protection afforded by the devices which have been installed on its buildings and equipment by Morse and also, in most instances, to the personal service which Morse will give to the subscriber if the devices are activated and a signal is sent to Morse reporting a burglary, fire or holdup, or that certain equipment is not functioning properly.

The Tax Commissioner is of the view that the monthly charge made by Morse to its subscribers is a "consideration" paid for the rental of the tangible personal property which Morse has installed on its subscribers' buildings or equipment and the Tax Commissoner has assessed the 3% Ohio sales tax against each of these monthly charges.

The appellant, on the other hand, denies that any "sale" of tangible personal property has been consummated by way of rental of tangible personal property and it maintains that the monthly charge made by it to its subscribers is a charge for a "personal service transaction which involves the transfer of tangible personal property as an inconsequential element for which no separate charges are made" and that, therefore, the transaction for which it makes a monthly charge to its subscribers is a transaction which is excluded from the definition of "sale" as that word is defined in Section 5739.01(B), Revised Code.

From the testimony and evidence it appears that Morse's business is divided into two main categories, as follows:

(1) Local burglary alarm systems. (Type of contract as set out in appellant's exhibit No. 2.)

(2) Central station alarm systems. (Type of contract as set out in appellant's exhibit No. 3.)

The local burglar alarm system is a self-contained system installed on a subscriber's premises which sounds a bell or other alarm only on the customer's premises when an unauthorized entry is made into the subscriber's premises. The local alarm system consists of contacts fitted to

movable openings such as doors, windows, skylights, screens and panels, and the wires, foil and other devices which are connected to a bell or gong on the subscriber's premises. Once a local burglar alarm system is installed on a customer's premises, Morse does nothing more in connection therewith except to keep it in working order. When there is a burglary or intrusion on the subscriber's premises, the alarm sounds only on the subscriber's premises, and Morse knows nothing about it until such information is given to it by the subscriber, the police or some other interested person. After an intrusion, and after having been informed that there was an intrusion, Morse's service men then enter the premises to reactivate or repair the device for future operations.

The central station burglar alarm system is similar to the local burglar alarm system except that no alarm, gong or bell sounds on the subscriber's premises when there is a burglary or other intrusion. Instead, a transmitter sends a signal or coded message over telephone wires leased by Morse to Morse's "central station" and Morse then notifies the police and immediately dispatches some of its own armed guards or other armed employees to the subscriber's premises. The "central station" is a large room within the building wherein Morse conducts its business. From two to twelve of Morse's 60 employees are on duty in the central station every minute of the day and night and these employees are not engaged in selling, renting or servicing equipment. Their function is to observe and check the equipment contained in the central station and to monitor the complex network of antennae and leased telephone wire equipment which connects the central station to each of Morse's "central station" subscribers.

When there is a failure of water pressure or undesirable deviation in the temperature or pressure, or other breakdown on the premises or equipment upon which has been installed Morse's monitoring devices which are connected to the "central station," a signal is sent to the central station and Morse immediately notifies the subscriber that his equipment is not operating properly.

In connection with the operation of some of the systems it is necessary for the subscriber to turn a key or press a switch or close windows or doors to either activate or deactivate the system, but the subscriber has no function in the maintenance or operation of the system and regardless of what the subscriber does, the "central station" system is always in operation.

From the testimony and evidence it appears that the items of tangible personal property which Morse installs on its subscriber's premises or equipment cost Morse, on the average, about 10% of the total amount that Morse charges its subscribers over a five year contract period, and that the useful life of the items of equipment varies from about 1 year to about 15 years.

It is also noted from the record that Morse's income generated from the two systems for the audit period is as follows:

|  | 1961 | 1962 | 1963 |
|---|---|---|---|
| Local Alarm | $122,425.00 | $121,793.69 | $121,118.88 |
| Central Station | 420,090.25 | 447,739.75 | 466,102.26 |

The pertinent portions of Section 5739.01, Revised Code, read as follows:

"As used in Sections 5739.01 to 5739.31, inclusive, of the Revised Code:

"* * *

"(B) 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted; * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever; * * *.

"Other than as provided in this section, 'sale' or 'selling' do not include * * * personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made.

"(C) 'Vendor' means the person by whom the transfer effected or license given by a sale is (sic) to be made or given, * * *."

"(D) 'Consumer' means the person to whom the transfer effected or license given by a sale is or is to be made or given; * * *."

Counsel for the parties have cited numerous decisions in support of their respective positions. Counsel for the appellant has referred us to the following decisions: *Federal Sign & Signal Corp.* v. *Bowers,* B. T. A. 43066 (1960), 172 Ohio St. 161; *Miami Conservancy District* v. *Bucher et al.,* 87 Ohio App. 390; *Randall Park Jockey Club, Inc.* v. *Peck,* 162 Ohio St. 245; *The Recording Devices, Inc.* v. *Bowers,* 173 Ohio St. 469; *The United States* v. *Moore,* 95 U. S. 760.

Counsel for the appellee has referred us to the following additional decisions: *W. Carlyle Vogel d. b. a. Safety Service Products Corp.* v. *Bowers,* B. T. A. 46228 (1961); *LeLand Van Camp and Melvin Utt d. b. a. Job-Time-John Corporation* v. *Schneider,* B. T. A. 56434 (1965); *Pla-Mor, Inc.* v. *Glander,* 149 Ohio St. 295.

The board has read and studied all of these decisions and it appears that none are in point on the specific issues to be decided in the case now before us.

From the testimony, evidence and exhibits in the record, the Board of Tax Appeals finds that the monthly charges made by Morse to its subscribers for central station (Appellant's Exhibit No. 3) service is a charge for "personal service" within the meaning of those words used in Section 5739.01(B), Revised Code, and that the transaction involves the transfer of "constructive possession" or "formal possession" of tangible personal property as an inconsequential element (both on a functional and economic basis) for which no separate charge is made. We therefore find that all such "central station" transactions are excluded from the definition of "sale" and "selling" as set out in Section 5739.01(B), Revised Code, and are not subject to the 3% Ohio sales tax.

It is clear from the record that the items of tangible personal property which Morse installs on the premises and equipment of its "central station" subscribers is of no particular use to the subscribers without the services which Morse stands ready to, and does, render to its subscribers.

The items are, for all practical purposes, used only by and for Morse to set into motion a series of occurrences for which Morse will render service and it is this personal service for which the subscriber is paying. The items of tangible personal property are but a part of the integrated closed circuit connection which Morse uses to fulfill its part of its "central station" contract. The subscriber neither orders, specifies or uses the items of tangible personal property and said items, in and of themselves, are of no interest to the subscriber whose sole interest is the monitoring protection and detection personal service offered by Morse. As to all items installed on a subscriber's premises or equipment under "central station" contracts, we find that Morse is the "consumer" thereof as that word is used in Section 5739.01(D), Revised Code, and that Morse itself consumes said items in the performance of its personal service "central station" contracts.

As to all other monthly charges made by Morse to its subscribers (Appellant's Exhibit No. 2) which have been subjected to sales tax by the Tax Commissioner, we find that said charges are for the rental of tangible personal property and were properly subjected to Ohio sales tax for the reason that Morse is the "vendor" thereof as that word is used in Section 5739.01(C), Revised Code. As to these items it is clear that Morse supplies no personal service in connection therewith other than the normal maintenance or repair service thereof which would be, and is, done in connection with the rental of such items as typewriters, adding machines, computers, etc., and that any such personal service that is so supplied is inconsequential.

As to the appellant's contention that the Tax Commissioner is estopped from making the assessment here in question, it is clear that estoppel does not apply against the state of Ohio. See *The Recording Devices, Inc.* v. *Bowers,* 174 Ohio St. 581.

Giving effect to the observations and conclusions above noted, it is the decision and order of the Board of Tax Appeals that the final order of the Tax Commissioner herein complained of be modified to the extent that the Tax Commissioner is directed to remove from the assessment all

sales tax based on Morse's monthly charges for "central station" transactions covered by contracts similar to the contract which has been denoted in appellant's exhibit No. 3 and as thus modified, the final order of the Tax Commissioner is, in all other respects, affirmed.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation this day taken with respect to the above matter.

s/ Arthur W. Moore
Secretary

DISSENTING OPINION BY MEMBER EDWIN F. SAWICKI

This member concurs in general with the views and conclusions expressed by his colleagues, but dissents from those views and conclusions which make an exception of the appellant's "Central Station Alarm System" from the other alarm systems referred to in this case.

The reason for dissenting is that this member of the board believes that the conclusions and findings of the Board of Tax Appeals should be uniform in regard to all of appellant's alarm systems because it is obvious that the primary and foremost objective of each subscriber is to obtain from the contractor (Morse) the use of a suitable detection and alarm system which consists of certain items of Morse's tangible personal property being carefully selected by Morse to fit the customer's needs and then expertly installed on or about the subscriber's premises by Morse, whose further responsibility entails the maintenance and repair of those select items of installed personal property whenever necessary.

In order to fulfill the primary and foremost objective of every detection and monitoring or alarm system, it is usually unimportant whether the monitoring signal or alarm be heard or noted on or about the subscriber's premises or at a nearby fire or police station or at Morse's Central Station. To detect and either monitor or alarm, are the most important and primary functions of the system.

It appears that many subscribers also have a secondary objective and that is to enhance the results of the de-

tection and alarm system by contracting for the services of a staff of Morse's highly trained experts in the field of protection and related accommodations through the use of Morse's Central Station Alarm System.

The record in this case unequivocally establishes the fact that every subscriber must have Morse's select items of personal property installed on his premises by Morse when he contracts for the benefits or use of any of appellant's monitoring or alarm systems. These installations are of equal benefit or use to Morse, because without them, the appellant is unable to fulfill its contractual obligations to the subscriber, and therefore, Morse must transfer "possession" of said installed items to its subscribers. It is this transfer of "possession" for a consideration (monthly charge) which makes the transaction a "sale" by way of rental.

For the reasons above stated, it is clear that as to all monthly charges made by Morse to its subscribers (Appellant's Exhibit No. 2) which have been subjected to sales tax by the Tax Commissioner, the Board of Tax Appeals should find that said charges are for the rental of tangible personal property and were properly subjected to Ohio sales tax for the reason that Morse is the "vendor" thereof, as that word is used in Section 5739.01(C), Revised Code.

It is also clear that the personal service supplied by Morse in connection with said rental of tangible personal property is the normal maintenance or repair service thereof which is usually done, for example, in connection with the rental of such items of personal property as typewriters, adding machines, computers and similar items, and that any such personal service, and the monitoring service and follow-up that is under some contracts furnished by Morse is inconsequential in fulfilling each subscriber's primary and foremost objective which is to obtain the use of a suitabe detection and alarm system.

Giving effect to the observations and conclusions above noted, it is the opinion of this member of the Board of Tax Appeals that the final order of the Tax Commissioner herein complained of should be affirmed.